524 So.2d 458 (1988)
Donna L. GLINECK, Appellant,
v.
Carl W. LENTZ, III, et al., Appellees.
No. 87-838.
District Court of Appeal of Florida, Fifth District.
March 31, 1988.
Rehearing Denied May 4, 1988.
Benjamin Yancy Saxon, II, and Edward J. Richardson of Saxon & Richardson, P.A., Melbourne, and M. Brice Corder, Melbourne, for appellant.
James W. Smith and Robert K. Rouse, Jr., of Smith, Schoder & Rouse, P.A., Daytona Beach, for appellees.
COWART, Judge.
An allegation that the plaintiff-patient gave the defendant-doctor actual oral notice of intent to initiate litigation for medical malpractice fails to allege compliance with section 768.57(2), Florida Statutes (1985), which requires such notice of intent be in writing and served by certified mail, return receipt requested.
If notice of an intended medical malpractice action is necessary, and the legislature has directed it, then there is good reason that the form of such notice be such as to eliminate or reduce contention and litigation concerning compliance with such notice requirement. We decline to disregard the clear legislative direction contained in the statute and decline to hold that actual notice is sufficient compliance with the statute.
The order dismissing the complaint is
AFFIRMED.
DAUKSCH, J., concurs.
ORFINGER, J., dissents with opinion.
ORFINGER, Judge, dissenting.
The issue before us is whether actual, verbal notice to a physician by a patient that she intends to initiate a medical malpractice action against him for an allegedly negligent act, given more than 90 days prior to the filing of the malpractice action, satisfies the requirements of section 768.57(2), Florida Statutes (Supp. 1986).[1]
The amended complaint alleged, in substance, that the plaintiff and her attorney personally met with appellee at his office, informed him of their intention to file a medical malpractice action against him for acts which they considered to have been negligently performed and demanded copies of relevant medical records and photographs in appellee's files which were then furnished; that based upon the notice appellee notified his malpractice carrier of plaintiff's claim and furnished the carrier with complete information regarding the treatment rendered to plaintiff; that the carrier retained counsel with regard to the claim; that the carrier and its attorneys conducted an "immediate and thorough investigation of plaintiff's claim." Plaintiff further alleges her willingness to cooperate with the insurer in the investigation of the *459 claim, to submit to a physical examination and to appear before a pretrial screening panel or a medical review committee if requested to do so.
Assuming these allegations to be true, as we must in ruling on a motion to dismiss, it seems to me that the plaintiff has alleged substantial, if not literal, compliance with the statute. Although the majority opinion proposes a bright-line rule, it overlooks the clear intent of the statute, which is to give a medical practitioner a reasonable opportunity (90 days) to review the merits of a claim and to settle the claim without litigation if it appears to be meritorious, or to propose arbitration as to damages if liability is admitted. The statute prohibits the filing of suit within this 90 day period. § 768.57(3), Fla. Stat. (Supp. 1986). Both the claimant and the prospective defendant must cooperate with the insurer, and claimant must appear before a pretrial screening committee or before a medical review committee, and must submit to a physical examination, if required. At or before the end of the 90 day period, the insurer or self-insurer is required to respond by either rejecting the claim, making a settlement offer or admitting liability and demanding arbitration on damages. Obviously, the purpose of the notice in the first place is to start this chain of procedure, and it should make little difference how the notice is communicated, so long as it is given in an unequivocal manner.
In analogous circumstances, strict compliance with a requirement as to the form of notice has not been required. In Tillman v. City of Pompano Beach, 100 So.2d 53 (Fla. 1957), the court was faced with the task of determining whether there had been compliance with a legislative act which required that a city be given written notice of a claim within 30 days of injury as a condition to the maintenance of an action against the city, when the complaint failed to allege the giving of written notice, but alleged that the officials to whom the notice would have been given had actual notice of the occurrence. In determining that there had been substantial compliance with the statute the court observed:
We have frequently expressed our views regarding the purpose of municipal charter provisions requiring notice to the city within a time certain. See Olivier v. City of St. Petersburg, Fla., 65 So.2d 71, and Buck v. City of Hallandale, Fla., 85 So.2d 825. There can be no doubt that the actual notice which was had by the city officials in the instant case fulfilled the purpose of the charter provisions. When the city manager and a member of the city commission, directly after the accident occurred, made an investigation thereof, the city was then on an equal footing with appellant and had an opportunity to investigate the matter in detail in order to determine whether a settlement was indicated and prepare the city's case for a trial if necessary.
100 So.2d at 55.
In Rabinowitz v. Town of Bay Harbor Islands, 178 So.2d 9 (Fla. 1965), in construing a similar municipal notice requirement, the court noted that:
As early as Crumbley v. City of Jacksonville, 102 Fla. 408, 135 So. 885, this Court held that a technical defect in such a notice could be waived through the acts of city authorities when the notice was sufficient to provide them with an opportunity to investigate the facts within a short time after the occurrence. In City of Gainesville v. Kirkland, supra [116 Fla. 319, 156 So. 601 (1934)], it was held that the giving of the notice could be made unnecessary by the conduct of municipal officials who had actual knowledge of the occurrence and completed a thorough investigation.
178 So.2d at 12.
The purpose and intent of the statute is as well-served by giving actual, oral notice as it is by the giving of a written notice containing the same information. If the view of the majority is upheld, then a written notice sent certified mail, but without requesting a return receipt, would be ineffective, even though the notice was actually received by the medical practitioner. The same would be true of a written notice personally delivered or any other form of written notice that was not submitted precisely in the form required by the statute, *460 even though notice was actually received by the practitioner. "[C]laim statutes should not be burdened with strained constructions that would hamper the presentation of just claims in the presence of substantial compliance with the statute. Magee v. City of Jacksonville, Fla., 87 So.2d 589, 62 A.L.R.2d 334," cited in Rabinowitz, supra at p. 12.
At this point we have only allegations, not proof. While I appreciate the desire of the majority to reduce or eliminate contention as to compliance with the notice requirement, the courts have traditionally handled disputes and contention very well. After all, there are many disputed contentions in a medical malpractice claim, most of them much more difficult to resolve than the question of notice. Adding this minor problem should not unduly strain the system. Because I strongly believe that we should not elevate form over substance, I would hold the allegations sufficient and reverse.
NOTES
[1] Section 768.57(2), Florida Statutes (Supp. 1986) provides:

Prior to filing a claim for medical malpractice, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical malpractice.